IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERDAWS AMIRI, ILYAS YONISI | Case No. 14-CV-03333 SC |
| Plaintiffs, | ORDER TRANSFERRING VENUE TO THE EASTERN DISTRICT OF VIRGINIA |
| v. | |
| DYNCORP INTERNATIONAL, INC., et al. | |
| Defendants. | |

## I. INTRODUCTION

Now before the Court is Defendants DynCorp International Inc. ("DII"), DynCorp International LLC ("DI LLC"), Worldwide Recruiting and Staffing Services LLC, and DTS Aviation Services, LLC's[1] (collectively, "Defendants" or "DynCorp") motion to dismiss Plaintiffs Ferdaws Amiri and Ilyas Yonisi's second amended

---

[1] DTS Aviation Services, LLC was erroneously sued as "DynCorp Aviation Services, Inc." ECF No. 35 ("French Decl.") at ¶ 9. For simplicity the Court will refer to the Defendant by its correct name, or "DTS" for short.

complaint ("SAC"), ECF No. 22, for lack of personal jurisdiction and improper venue. ECF No. 32 ("Mot."). The motion is opposed, ECF No. 40 ("Opp'n"), and Defendants filed a reply. ECF No. 42 ("Reply"). The motion is appropriate for resolution without oral argument under Civil Local Rule 7-1(b). For the reasons set forth below, the motion is GRANTED and the Court DIRECTS the clerk to transfer the action to the Eastern District of Virginia, Alexandria Division pursuant to 28 U.S.C. Section 1406(a).

## II. BACKGROUND

This is a personal injury case alleging claims for battery, assault, and various forms of negligence that arose from a car accident in Afghanistan.

Plaintiffs worked for a company called AECOM Government Services as military contractors, and were in Afghanistan to participate in human intelligence gathering in support of United States military operations. Among many other nationwide and worldwide activities, Defendants provide an array of military contracting services including transportation, security, training, advising, and mentoring for the Afghan National Police.

Plaintiffs allege that, while driving military informants from Camp Phoenix (a military installation in Kabul maintained by the United States Army) two DynCorp vehicles driven by DynCorp employees repeatedly tried to run Plaintiffs off the road. Plaintiffs' vehicle was struck several times, and both Plaintiffs suffered serious injuries as a result. Furthermore, Plaintiffs contend that DynCorp was aware of other similar acts by its drivers

2

but, rather than attempt to prevent such conduct, encouraged its employees to act aggressively.

Plaintiffs are citizens of California.  DII is incorporated in Delaware with its principal place of business in Virginia.  DI LLC is organized in Delaware with its principal place of business in Virginia, and is wholly owned by DII.  DTS Aviation Services, LLC ("DTS Aviation") is organized in Nevada with its principal place of business in Texas, and DI LLC is its sole member.  Worldwide Recruiting and Staffing Services LLC ("Worldwide") is organized in Delaware with its principal place of business in Texas, and DI LLC is its sole member.

Now Defendants move to dismiss under Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure, arguing that the Court lacks personal jurisdiction over Defendants and that venue is improper in this district.  Plaintiffs oppose.

### III. LEGAL STANDARD

#### A. Personal Jurisdiction

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, defendants may move to dismiss for lack of personal jurisdiction.  Plaintiffs bear the burden of showing that the Court has personal jurisdiction over Defendants.  See Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006).  "[T]his demonstration requires that the plaintiff make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." Id. (quotations omitted).  "[T]he court resolves all disputed facts in favor of the plaintiff . . . ." Id. (quotations omitted).

The Court follows state law in determining the bounds of

3

personal jurisdiction. Walden v. Fiore, 134 S. Ct. 1115, 1121 (2014). California's long-arm statute is coextensive with the limits of federal due process. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800-01 (9th Cir. 2004). "Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have 'certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Walden, 134 S. Ct. at 1121 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

If a defendant has sufficient minimum contacts with the relevant forum, personal jurisdiction may be founded on either general jurisdiction or specific jurisdiction. Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998). Plaintiffs in this case rely solely on general jurisdiction. General jurisdiction exists only when the defendant's contacts "'are so continuous and systematic as to render [it] essentially at home in the forum state.'" Daimler AG v. Bauman, 134 S. Ct. 746, 752 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011)) (internal quotation marks omitted).

**B.   Venue**

Federal Rule of Civil Procedure 12(b)(3) allows a defendant to move to dismiss an action for improper venue. On a Rule 12(b)(3) motion, "the pleadings need not be accepted as true, and the court may consider facts outside of the pleadings," but the court must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party. Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1137 (9th Cir. 2004).

4

## III. DISCUSSION

Plaintiffs do not argue that the Court may exercise specific jurisdiction over Defendants. Instead, they argue that personal jurisdiction here is founded on general jurisdiction. Additionally, Plaintiffs allege venue is proper in this district solely on the basis of the Court's personal jurisdiction over Defendants. See 28 U.S.C. 1391(b)(3) (providing for venue in "any judicial district in which any defendant is subject to the court's personal jurisdiction . . .").

Because the Court concludes it lacks personal jurisdiction over Defendants, the Court finds venue improper as well.

### A.   Personal Jurisdiction

In order to exercise general (sometimes called "all-purpose") jurisdiction over Defendants, the Court must conclude that Defendants have "certain minimum contacts with [California] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe, 326 U.S. at 316 (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). Even if Plaintiffs can satisfy that test, the exercise of general jurisdiction also requires a showing that Defendants' contacts with California are "'so continuous and systematic as to render [Defendants] essentially at home'" in California. Daimler, 134 S. Ct. at 760 (quoting Goodyear, 131 S. Ct. at 2851) (internal quotation marks omitted). In other words, to be "essentially at home in the forum [s]tate," a company must be "comparable to a domestic enterprise in that State." Id. at 758 n.11.

Some have called this the "home-state test," and outside a

corporation's place of incorporation or principal place of business it is rarely satisfied. See Howard M. Erichson, The Home-State Test for General Personal Jurisdiction, 68 Vand. L. Rev. En Banc 81, 83 (2013). In two recent cases, the Supreme Court has termed these two forums -- the place of incorporation and principal place of business -- the "paradigm all-purpose forums . . . ." Daimler, 134 S. Ct. at 760; Goodyear, 131 S. Ct. at 2853-54. Nonetheless, the Supreme Court did not restrict general jurisdiction to only those two forums. Instead, the Court pointed out "that in an exceptional case . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that state." Daimler, at 761 n.19 (citing Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437 (1952)). While the Court did not define what an "exceptional case" is, its treatment of Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437 (1952), indicates the bar for such a finding is very high.

    In Perkins, the defendant was a corporation organized under the laws of the Philippines. During the Japanese occupation in World War II, the defendant's president moved to Ohio where he maintained an office, the company's files, and organized the company's activities. Id. at 448. The plaintiff sued the company in Ohio on a claim that had no connection to Ohio. Id. at 438. Nevertheless, the Supreme Court held that exercising general jurisdiction over the defendant was appropriate because "Ohio was the corporation's principal, if temporary, place of business." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 780, n.11 (1984).

6

"This presumably is the type of situation that [Daimler] envisioned as the 'exceptional case' in which a defendant's affiliations with the forum are 'comparable' to those of a domestic company."  Alan M. Trammell, A Tale of Two Jurisdictions, 68 Vand. L. Rev. (forthcoming 2015) at 20, available at: http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2417040 (last accessed January 9, 2015).  Yet "in the overwhelming majority of cases there will be no occasion to explore whether a Perkins-type exception might apply" because the Supreme Court's analysis in Daimler focused almost exclusively on the paradigmatic bases for general jurisdiction -- the corporation's place of incorporation and principal place of business.  Id. (citing Daimler, 134 S. Ct. at 761)).

None of the paradigmatic bases for general jurisdiction are present in this case.  Defendants are not incorporated in California, and none have their principal place of business here.  Accordingly, Plaintiffs must show that this is the kind of "exceptional case" in which Defendants' operations in California are "so substantial and of such a nature as to render [Defendants] at home in" California.  Daimler, 134 S. Ct. at 761 n.19.

Plaintiffs argue that five sets of contacts between Defendants and California are sufficient to create general jurisdiction: (1) DI LLC's contracts to do business with NASA at Edwards Air Force Base in Edwards, California, (2) DI LLC's contract to do aircraft maintenance for the Marine Corps in Miramar, California, (3) DII's contract with the State of California to fight wildfires, (4) two aircraft maintenance facilities owned or operated by DII or DI LLC in Redding and Ukiah, California, and (5) DI LLC's 239 employees in

7

California.

As a preliminary matter, Defendants take issue with some of these factual allegations. While these factual issues ultimately do not affect the outcome (the Court lacks personal jurisdiction regardless), the Court pauses to address them.

For instance, Plaintiffs argue that DII's contacts with California are sufficient to render it at home here because (1) it has a contract with CalFire, a state agency, to fight wildfires, and (2) DII or its subsidiaries operate two aircraft maintenance facilities in the state. Defendants do not dispute the particulars of the CalFire contract, which was in place in one form or another since 2001, was the subject of a $137.7 million extension in 2008, includes responsibility for wildfire prevention and control for 30 million acres of state land, and involved 7,550 flight hours by DynCorp pilots in 2007 alone. Instead, as Defendants point out in several declarations, the CalFire contract is actually between DynCorp International LLC, not DynCorp International, Inc. Those same declarations aver that DII is not registered to do business in California, has no registered agent in California, and has no employees, contracts, or facilities in California. See ECF Nos. 35 ("French Decl.") at ¶¶ 3-6; 37 ("Castillo Decl.") at ¶ 3. Plaintiffs ignore these declarations, instead resting on the allegations in their complaint and the declaration of one of their attorneys attaching various documents located during Internet searches. See ECF No. 40-2 ("Flores Decl.") Ex. A. Among those documents is a press release indicating that DII has the contract with CalFire, and two entries from yp.com, the internet version of the Yellow Pages, showing DynCorp locations in Redding and Ukiah.

Id. at 1-7.

Defendants complain that "Plaintiffs contend that a press release has the same force and effect, and in fact, should be deemed more reliable than declaration [sic] submitted to this court under penalty of perjury." Reply at 4. But for the purposes of a Rule 12(b)(2) motion, the Court must resolve factual disputes in Plaintiffs' favor. See Pebble Beach, 453 F.3d at 1154. True, "[w]hen a defendant provides affidavits to support a Rule 12(b)(2) motion, the plaintiff may not simply rest on the allegations of the complaint." Wright & Miller, 4 Fed. Prac. & Proc. Civ. § 1067.6 (3d ed.); see also Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011), however that is not what happened with these allegations. Even if Plaintiffs' declaration appears exceedingly weak in light of Defendants' substantial submissions, because the Court did not hold an evidentiary hearing, the Court must treat Plaintiffs' allegations about the CalFire contract and Redding and Ukiah locations as true for the purpose of the motion. Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003).

This is not true, however, of several of the unsupported allegations in Plaintiffs' complaint. For example, Plaintiffs contend that DII is the parent company of the various DynCorp entities and "controls and is involved in the contracts and decision making for doing business that DynCorp International LLC and other entities has in California . . . ." Opp'n at 9. In Plaintiffs' view "[t]his has been pleaded in the Complaint and is sufficient to subject DynCorp International Inc[.] to jurisdiction in California as it is the principal of its agent DynCorp

International LLC and the other DynCorp defendants." Id. (citing Daimler, 134 S. Ct. at 760 for the proposition that "the Supreme Court assumed the contacts of the subsidiary could be imputed to the parent"). Tabling Plaintiffs' legal conclusion for the moment, Plaintiffs' sole basis for this factual conclusion is the allegations in their Complaint. However, as Defendants point out in their declarations, DII is not the managing member of any of the other DynCorp entities and "makes no decisions as it has no employees." Reply at 4 (citing French Decl. ¶¶ 8, 10, 14). Instead, DII is the sole member of DI LLC which, in turn, is the sole member of DTS Aviation and Worldwide. Similarly, Defendants' declarations contradict Plaintiffs' unsupported allegation that DII has been registered with the California Secretary of State to do business in the state since 1946. Compare Compl. ¶ 13, with French Decl. ¶ 4. Because these are "allegations in a pleading [that] are contradicted by affidavit," the Court "may not assume the[ir] truth . . . ." Marvix, 647 F.3d at 1223 (quoting Data Disc., Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1284 (9th Cir. 1977)) (quotation marks omitted).

As a result, the relevant contacts are as follows. DII's contacts are limited to the CalFire contract and the Ukiah and Redding addresses. DI LLC has (1) a contract with NASA worth between $46.6 million and $176.9 million (depending on whether NASA exercises certain options) for aircraft maintenance and support split between four facilities, one of which is located in California (Edwards Air Force Base), (2) a $9,643,087 contract with the Marine Corps with 16 percent of the work to be performed at the Marine Corps Air Station Miramar, California, (3) 239 employees who

reside in California, and (4) registration with the Secretary of State to do business in California. Worldwide posts jobs in California on its website, which lists positions with DynCorp entities worldwide. Plaintiffs do not allege any direct contacts between DTS Aviation Services LLC and California, however, Plaintiffs do allege that DTS (and the other DynCorp entities) is an agent or alter ego of the other Defendants.

Considering the DynCorp entities' activities "in their entirety, nationwide and worldwide," none of the DynCorp entities can be deemed "at home" in California. Daimler, 134 S. Ct. at 762 n.20. Nonetheless, to understand that conclusion it is helpful to review two recent cases, Daimler and a subsequent Ninth Circuit case, Martinez v. Aero Caribbean, 764 F.3d 1062 (9th Cir. 2014), both of which found contacts between corporate defendants and California insufficient to satisfy the home-state test.

First, in Daimler, the Supreme Court held that the California activities of Daimler's subsidiary, Mercedes-Benz USA, LLC ("MBUSA"), were insufficient to subject Daimler to general jurisdiction in California. 134 S. Ct. at 750-51. MBUSA, a Delaware corporation with its principal place of business in New Jersey had multiple facilities in California, was "the largest supplier of luxury vehicles to the California market," with California sales accounting for 2.4% of Daimler's worldwide sales. Id. at 752. While the Supreme Court assumed (without deciding) both that MBUSA would be subject to general jurisdiction and that MBUSA's contacts with California could be imputed to Daimler, the Court nonetheless held that Daimler's contacts were insufficient "to render [it] essentially at home" in California. Id. at 751.

11

Instead, the Court emphasized that general jurisdiction is available against corporate defendants outside a corporation's place of incorporation and principal place of business in only "exceptional case[s] . . . ." Id. at 760-61 & n.19.

Second, after Daimler, the Ninth Circuit rejected an attempt to assert general jurisdiction against a foreign corporation in California. In Martinez, the plaintiffs alleged general jurisdiction against ATR, a French company, based on several hundred million dollars of contracts to sell aircraft and components in California, sending company representatives to California for business purposes, an unaffiliated entity's use of ATR's aircraft for flights in California, and advertisements in publications distributed in California. 764 F.3d at 1071. Relying heavily in Daimler, Judge Fletcher wrote that these contacts were "plainly insufficient to subject ATR to general jurisdiction in California." Id. Specifically, the Ninth Circuit noted that ATR was organized and had its principal place of business in France, had no offices, staff, or other physical presence in California, was not licensed to do business in California, and its California contacts were minor compared to its worldwide activities. Id.

In light of these cases it is easy to conclude that DTS Aviation and Worldwide are not "at home" in California. Setting aside the possibility of jurisdiction based on an agency or alter ego theory (which the Court will address later), Plaintiffs allege no contacts at all between DTS Aviation and California. Plaintiffs do allege contacts between Worldwide and California stemming from Worldwide's website, which lists jobs available in California, however, that is not sufficient either. Worldwide provides

staffing and recruiting services for all the DynCorp entities worldwide, not simply or predominantly in California. When viewed "in their entirety" Worldwide's California activities are at best a small part of a much larger, worldwide business, and fall far short of the high bar for exercising general jurisdiction. Concluding otherwise would leave Worldwide subject to suit in any state in which it operates -- a result that runs directly contrary to Daimler. See 134 S. Ct. at 761-62 (rejecting a theory that would render jurisdiction "presumably . . . available in every other State in which [an entities'] sales are sizeable").

General jurisdiction is also inappropriate as to DII or DI LLC. First, while DII has two addresses in California, the Supreme Court has signaled that the existence of local offices or real property "should not attract heavy reliance today." Daimler, 134 S. Ct. at 761 n.18. The reason to discount local offices is a result of the shift from the territorial view of jurisdiction, embodied in Pennoyer v. Neff, 95 U.S. 714 (1877), to today's more flexible view. Daimler, at 754-55 & n.18. Moreover, viewing those locations as well as DII's CalFire contract and DI LLC's NASA and Marine Corps contracts and California employees in light of DII and DI LLC's "activities in their entirety, nationwide and worldwide," it is clear neither is "at home" in California. Id. at n.20. For instance, the most recent amendment to Form S-4 filed by DII stated that it had "approximately 89 active contracts and approximately 128 active task orders," with ordinary contracts ranging "from three to ten years."[2] Similarly, DI LLC's California contracts

---

[2] See Delta Tucker Holdings, Inc. & DynCorp International, Inc., Am. No. 1 to Form S-4 (filed June 3, 2011). The Court takes

13

"together equate to approximately 1% of worldwide revenues," ECF No. 36 ("Hille Decl.") at ¶ 2, and just 239 of its 13,350 worldwide employees work in California, none of whom are corporate officers. Castillo Decl. ¶ 5-7. If a few isolated government contracts were enough to subject DI LLC to suit for causes of action having nothing to do with those contracts (or even the forum state), then DI LLC would presumably be amenable to suit in all 33 states in which it operates. See id. at ¶ 5. The Supreme Court rejected a similar theory in Daimler when it said "[s]uch exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." 134 S. Ct. at 761-62 (internal quotation marks omitted); see also United States ex rel. Imco Gen. Const., Inc. v. Ins. Co of Pa., No. C14-0752RSL, 2014 WL 4364854, at *3 (W.D. Wash. Sept. 3, 2014). As a result, the Court finds that because DII and DI LLC's "California contacts are minor compared to [their] other worldwide contacts," neither can be properly deemed "at home" in California. Martinez, 764 F.3d at 1070.

Nor are Plaintiffs' agency or alter ego allegations sufficient to provide jurisdiction over Defendants. The Ninth Circuit's approach to determining personal jurisdiction based on agency or alter ego is in flux after the Supreme Court's decision in Daimler. See Donald Earl Childress III, General Jurisdiction after Bauman, 66 Vand. L. Rev. En Banc 197, 199 (2014) ("The Court appears to be calling into doubt whether a subsidiary's contacts can ever be

---

judicial notice of this filing. See In re Netflix, Inc., Sec. Litig., 923 F. Supp. 2d 1214, 1218 n.1 (N.D. Cal. 2013).

14

imputed to establish general jurisdiction . . . ."); see also Daimler, 134 S. Ct. at 759 n.13 (pointing out that even though agency relationships are relevant to specific jurisdiction, "[i]t does not inevitably follow, however, that similar reasoning applies to general jurisdiction") (emphasis in original).

Before Daimler, under Ninth Circuit law a court could impute a subsidiary's contacts with the forum to the parent if one of two tests was satisfied. The first test asks whether "there is such unity of interest and ownership that the separate personalities of the two entities no longer exists and . . . that failure to disregard their separate identities would result in fraud or injustice." Doe v. Unocal Corp., 248 F.3d 915, 926 (9th Cir. 2001) (alterations omitted) (quoting Am. Tele. & Telegraph Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 591 (9th Cir. 1996)). In other words, are the entities alter egos? The second approach, which the Ninth Circuit called the agency test, required "a showing that the subsidiary functions as the parent corporation's representative in that it performs services that are sufficiently important to the foreign corporation that if it did not have a representative perform them, the corporation's own officials would undertake to perform substantially similar services." Id. at 928. The Supreme Court took issue with this second test, pointing out that it "stacks the deck," and "will always yield a pro-jurisdiction answer" because "'[a]nything a corporation does through a[] . . . subsidiary . . . is presumably something the corporation would do by other means if the . . . subsidiary . . . did not exist.'" Daimler, 134 S. Ct. at 759 (quoting Bauman v. DaimlerChrysler Corp., 676 F.3d 774, 777 (9th Cir. 2011)

15

(O'Scannlain, J., dissenting from denial of rehearing en banc)) (internal quotation marks omitted).

Here the Court need not decide whether DI LLC or the other DynCorp entities' contacts with California can be imputed to DII or if Defendants are all alter egos of one another. Even assuming for the sake of argument that Defendants are all alter egos of one another and their California contacts can be imputed to one another, those contacts still fall far short of showing that this is an "exceptional case" where any of the DynCorp entities is at home in California. Id. at n.19. Concluding otherwise would, in light of DynCorp's substantial worldwide and nationwide activities, render it "at home" virtually everywhere it operates. But "[a] corporation that operates in many places can scarcely be deemed at home in all of them." Id. at n.20. Here, whether based on an agency/alter ego theory or standing alone, Defendants' contacts are simply insufficient to render them answerable for all claims in California. As a result, Plaintiffs have not shown the exercise of general jurisdiction would be appropriate here, and Defendants motion is GRANTED.

### 1. Jurisdictional Discovery and Leave to Amend

In the alternative, Plaintiffs seek jurisdictional discovery or leave to amend their complaint to allege additional jurisdictional facts.

"Discovery may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." Boschetto v. Hansing, 539 F.3d 1011, 1020 (9th Cir. 2008) (quoting Data Disc., 557 F.2d at 1285 n.1)). However, "[w]here a plaintiff's claim of

personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." Pebble Beach, 453 F.3d at 1160 (quoting Terracom v. Valley Nat'l Bank, 49 F.3d 555, 562 (9th Cir. 1995)). "To this end, plaintiff's [sic] seeking jurisdictional discovery must provide some basis to believe that discovery will lead to relevant evidence providing a basis for the exercise of personal jurisdiction," and courts have discretion to "deny requests based 'on little more than a hunch that [discovery] might yield jurisdictionally relevant facts.'" Pfister v. Selling Source, LLC, 931 F. Supp. 2d 1109, 1118 (D. Nev. 2013) (quoting Boschetto, 539 F.3d at 1020).

Here, Plaintiffs suggest that jurisdictional discovery is appropriate because there is "possible confusion" over Defendants' corporate structure. However, as the Court found earlier, even if all the contacts Plaintiffs have identified can be imputed to DII, that is still insufficient to permit the Court to exercise general jurisdiction over DII or the other Defendants. As a result, Plaintiffs' discovering more about Defendants' corporate structure is highly unlikely to yield jurisdictionally relevant facts. Plaintiffs also request discovery into "the specific nature of [Defendants'] business in California," but this is also insufficient because it is based on nothing more than a hunch that additional discovery might yield additional contacts. Opp'n at 13-14; see also Boschetto at 1020. Furthermore, even if Plaintiffs found potentially relevant jurisdictional facts through jurisdictional discovery, there is no basis aside from speculation for concluding those facts would render this the kind of

17

"exceptional case" in which exercising general jurisdiction outside the paradigm all-purpose forums is appropriate. See Daimler, 134 S. Ct. at 761 n.19.

Because the Court finds, as discussed further below, that transferring the action, rather than dismissing it, is the appropriate course of action, the Court declines to dismiss the action. As a result, there is no need to address Plaintiffs' argument about leave to amend.

**B.  Venue**

Additionally, the Court finds venue is improper in this District. Plaintiffs allege venue is proper in this District based on 28 U.S.C. Section 1391(b)(3), which provides for venue in "any judicial district in which any defendant is subject to the court's personal jurisdiction" when "there is no district in which an action may otherwise be brought." Id. Because the Court finds that none of the Defendants is subject to the Court's personal jurisdiction, venue is clearly improper under this subsection. See Pfister, 931 F. Supp. 2d at 1120. Similarly, neither of the two other subsections of Section 1391(b) can be satisfied because none of the Defendants reside in this District, and the events at issue did not take place here. See 28 U.S.C. § 1391(b)(1)-(2). Accordingly, Defendants' Rule 12(b)(3) motion is GRANTED.

Anticipating this conclusion, Plaintiffs urge the Court to transfer the case to a proper venue rather than dismiss the action, pointing out that their claims might be time-barred if the Court dismisses the action. 28 U.S.C. Section 1406(a) permits the Court to cure venue defects "in the interest of justice" by transferring the case "to any district or division in which it could have been

brought" rather than dismissing the action.  As other courts have recognized, "[a] compelling reason for transfer is that the plaintiff, whose case if transferred . . . will be time-barred if his case is dismissed and thus has to be filed anew in the right court."  Phillips v. Seiter, 173 F.3d 609, 610 (7th Cir. 1999) (Posner, J.).  As a result, the Court finds that transferring rather than dismissing the action is in the interests of justice.[3]

Defendants concede personal jurisdiction exists in Virginia and argue that venue is proper there as well.  However, Defendants do not specify which of Virginia's two districts, the Eastern and Western Districts, would be proper.  Based on the Court's research, it appears that DynCorp global headquarters is located at 1700 Old Meadow Road, McLean, Virginia 22102.  See DynCorp International, Contact, http://www.dyn-intl.com/about-di/contact/ (last accessed January 12, 2015).  McLean is in Fairfax County, and therefore falls within the Eastern District of Virginia, Alexandria Division.  E.D. Va. Local Civ. R. 3(B)(1).  Accordingly, the Court DIRECTS the Clerk to transfer this action there.

///
///
///
///
///
///
///
///

---

[3] The Court notes that it has the authority to transfer venue even when it lacks personal jurisdiction over Defendants.  See Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962).

19

**V. CONCLUSION**

For the reasons set forth above, the Court finds the exercise of general jurisdiction is inappropriate here and venue does not lie in this District. Accordingly, in the interests of justice, the Court DIRECTS the clerk to transfer the action to the Eastern District of Virginia, Alexandria Division, for all further proceedings.

IT IS SO ORDERED.

Dated: January 13, 2015

UNITED STATES DISTRICT JUDGE